1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT FOR THE

7                  EASTERN DISTRICT OF CALIFORNIA

8

9  JOE RASCON,                    )        No. CV-F-08-1394 OWW/GSA
                                  )
10                                )        MEMORANDUM DECISION AND
                                  )        ORDER DENYING  DEFENDANTS'
11              Plaintiff,        )        MOTION TO DISMISS (Doc. 8)
                                  )
12         vs.                    )
                                  )
13                                )
   CATALINA RODRIGUEZ, et al.,    )
14                                )
                                  )
15              Defendants.       )
                                  )
16 _____  )

17     Plaintiff Joe Rascon has filed a Complaint for Damages

18 against Catalina Rodriguez, Jonathan Long and David Wilkin, peace

19 officers with the Fresno Police Department; Larry Hustedde, a

20 sergeant with the Fresno Police Department; and Mark Salazar, a

21 lieutenant with the Fresno Police Department.

22     Plaintiff's Complaint alleges the following facts:

23          9.  On January 25, 2008, Plaintiff stopped at
            the Moonlite Restaurant located at 2731 West
24          Clinton Avenue, Fresno, California, where he
            was served and consumed two non-alcoholic
25          beverages.

26          10.  At approximately 5:20 p.m. as Plaintiff

                              1

exited the restaurant, he observed a Fresno police officer sitting in a patrol car with its overhead lights activated, parked in the middle of the restaurant parking lot.  The patrol car was located in a position partially behind and at a distance from Plaintiff's pickup, which was parked in a space immediately adjacent the building in a row with other parked vehicles.

11.  Plaintiff visually scanned the parking lot to determine if there was a vehicle that was the subject of the patrol car's presence at that location but there was no other vehicle not in a parking space and Plaintiff did not identify any person who appeared to be involved with the police officer.  The officer appeared to be completing paperwork inside the patrol car.

12.  Plaintiff entered his pickup, started the engine and turned on its lights. Plaintiff then engaged in a cell phone conversation for approximately one minute. After completing that conversation, Plaintiff looked back and determined the patrol car was still in the same location with the officer in the driver's seat.  Plaintiff exited his vehicle, went to the rear of the cab, waved at the officer but did not make any eye contact nor speak to the officer.

13.  Plaintiff got back into the pickup and started maneuvering the vehicle out of the parking space.  When the rear end of Plaintiff's pickup passed in front of the patrol car, the officer, Defendant Rodriguez, appeared to the left and rear of the pickup's driver's side door.  Defendant Rodriguez then yelled at Plaintiff that he was interfering with her traffic stop, to get out of his vehicle and accused Plaintiff of having been drinking.

14.  Plaintiff exited his vehicle as ordered and told Defendant Rodriguez that he had not been interfering and was merely backing out so he could leave; he further advised Defendant Rodriguez that he had not been aware she was conducting a stop.

2

15.   At that time, a second patrol car
arrived with two officers in it.   One of the
officers, Defendant Wilkin, asked Defendant
Rodriguez what was happening and she said
that Plaintiff had been interfering.   Both
officers in the second patrol car then exited
their vehicle.   Defendant Wilkin requested
Plaintiff's driver's license, which Plaintiff
provided.   Defendant Wilkin took the license
and walked back to the patrol car.   Defendant
Rodriguez then walked over to a car parked to
the left of Plaintiff's pickup and contacted
its driver.

16.   After the two officers walked away,
Defendant Long started talking to Plaintiff
in a disrespectful manner and pointing his
right index finger repeatedly in Plaintiff's
face.   Plaintiff stated that Defendant Long
needed to stop addressing Plaintiff in such a
rude and disrespectful manner; that
Defendants did not have legal cause to detain
Plaintiff.

17.   Defendant Wilkin returned and said to
Plaintiff 'You need to shut your mouth;
you're pissing me off.'   Defendant Wilkin
then leaned over Plaintiff's body, audibly
sniffed and said he smelled alcohol.
Defendant Wilkin stated Plaintiff was under
arrest for interfering and operating a motor
vehicle while under the influence of alcohol.
Plaintiff was handcuffed and walked by
Defendant Wilkin to the patrol car.

18.   At the patrol car, Defendant Wilkin
searched Plaintiff and retrieved his wallet
and thereby observed Plaintiff's Fresno
County Sheriff's badge and identification.
Defendant Wilkin asked Plaintiff why he had
not said he was a cop.   Defendant Wilkin put
Plaintiff in the rear of his caged patrol
car.

19.   Approximately ten minutes later,
Defendant Hustedde arrived and spoke with the
Defendant Officers.   With Plaintiff in the
rear of the patrol car, Defendant Hustedde
questioned Plaintiff three separate times
regarding the facts of the allegations of
interfering with Defendant Rodriguez's

3

1   traffic stop.  Defendant Hustedde questioned
    Plaintiff about the consumption of any
2   alcoholic beverage.  Defendant Hustedde
    stated there had been no violation of law.
3   Defendant Hustedde stated he had to summon
    his lieutenant to determine whether to book
4   Plaintiff into jail.

5   20.  Plaintiff requested a PAZ test to
    determine his blood alcohol but Defendant
6   Hustedde stated the lieutenant had refused to
    permit this.  Plaintiff is informed and
7   believes the referenced lieutenant was
    Defendant Salazar.

8
    21.  Approximately thirty minutes after
9   Plaintiff had been arrested, Defendant
    Salazar arrived and spoke with the Defendant
10  Officers, Defendant Hustedde and others.
    After Defendant Salazar had been on the scene
11  approximately twenty minutes, Plaintiff was
    released with no charges.  Defendant Salazar
12  also refused to have a PAZ test administered.

13      The First Claim for Relief is for violation of 42 U.S.C. §

14  1983 and alleges that, in detaining and arresting Plaintiff,

15  Defendants violated Plaintiff's right to equal protection and to

16  be free from unreasonable search and seizure.  The First Claim

17  for Relief alleges:

18          25.  That Defendants, and each of them, in
            all of their mutual and respective acts and
19          omissions in connection with Plaintiff's
            detention and arrest, knew that Plaintiff had
20          violated no law and that their aforesaid
            actions were without probable cause and in
21          violation of Plaintiff's aforesaid
            Constitutional rights and that the violation
22          of these rights was knowing, willful and
            malicious and with reckless disregard for
23          Plaintiff's rights.

24          26.  Plaintiff believes that Defendants, and
            each of them, in all of their mutual and
25          respective acts and omissions in connection
            with Plaintiff's detention and arrest, were
26          motivated by the fact that Plaintiff is

                                4

Hispanic.

The Second Claim for Relief is for conspiracy in violation of 42 U.S.C. § 1985 and alleges:

> 29.   In perpetrating, allowing, and ratifying the aforesaid acts and omissions, Defendants Rodriguez, Long and Wilkin, and each of them, conspired to and did interfere with and deny Plaintiff the exercise of his civil rights to be free from unlawful search and seizure.
>
> 30.   In perpetrating, allowing and ratifying the aforesaid acts and omissions of Defendants Rodriguez, Long and Wilkin, and each of them, Defendants Hustedde and Salazar refused to prevent the violation of Plaintiff's rights and the injuries and losses arising therefrom.

The Third Claim for Relief is for negligence pursuant to 42 U.S.C. § 1986 and alleges:

> 35.   Defendants Rodriguez [sic] and Hustedde, individually had knowledge of the aforesaid acts and omissions of Defendants Wilkin, Long and Salazar [sic], and each of them.
>
> 36.   Defendants Rodriguez [sic] and Hustedde, individually, had the power to prevent or aid in preventing the commission of these wrongs, but each of said Defendants neglected or refused to do so.
>
> 37.   In perpetrating, allowing and ratifying the aforesaid acts and omissions, Defendants Rodriguez [sic] and Hustedde, and each of them, neglected to prevent the violation of Plaintiff's rights and the injuries and losses arising therefrom.

Defendants move to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

A.   <u>Governing Standards</u>.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001). "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.,* 523 F.3d 934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, *id.* at 1964-1965. Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.

6

1  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However,

2  legal conclusions need not be taken as true merely because they

3  are cast in the form of factual allegations.  *Ileto v. Glock,*

4  *Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).

5      Immunities and other affirmative defenses may be upheld on a

6  motion to dismiss only when they are established on the face of

7  the complaint.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th

8  Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th

9  Cir. 1980)  When ruling on a motion to dismiss, the court may

10  consider the facts alleged in the complaint, documents attached

11  to the complaint, documents relied upon but not attached to the

12  complaint when authenticity is not contested, and matters of

13  which the court takes judicial notice.  *Parrino v. FHP, Inc.*, 146

14  F.3d 699, 705-706 (9th Cir.1988).

15      B.  <u>FIRST CLAIM FOR RELIEF</u>.

16      Defendants move to dismiss the First Claim for Relief on the

17  grounds that Plaintiff has failed to state a claim for denial of

18  equal protection under Section 1983; Plaintiff has failed to

19  adequately allege personal participation by all Defendants; and

20  Defendants Rodriguez, Hustedde and Salazar are entitled to

21  qualified immunity.

22          1.  <u>Denial of Equal Protection</u>.

23      "'To state a claim under 42 U.S.C. § 1983 for a violation of

24  the Equal Protection Clause of the Fourteenth Amendment a

25  plaintiff must show that the defendants acted with an intent or

26  purpose to discriminate against the plaintiff based on his

7

1   membership in a protected class.'" *Neveu v. City of Fresno*, 392

2   F.Supp.2d 1159, 1179 (E.D.Cal.2005), *quoting Lee v. City of Los*

3   *Angeles*, 250 F.3d 668, 686 (9th Cir.2001); *see also Moua v. City*

4   *of Chico*, 324 F.Supp.2d 1132, 1137 (E.D.Cal.2004):

5               In order to make out an equal protection
                violation, plaintiffs must prove four
6               elements: (1) the municipal defendants
                treated them differently from others
7               similarly situated; (2) this unequal
                treatment was based on an impermissible
8               classification; (3) the municipal defendants
                acted with discriminatory intent in applying
9               this classification; and (4) plaintiffs
                suffered injury as a result of the
10              discriminatory classification.

11      Defendants contend that the Complaint's conclusory

12  allegation that Plaintiff's detention and arrest were motivated

13  by the fact that Plaintiff is Hispanic does not state a claim

14  because there are no allegations which support his being treated

15  differently from other similarly situated persons or that

16  Defendants acted with an intent or purpose to discriminate

17  against Plaintiff based on his national origin.

18      Plaintiff responds that the factual allegations in the

19  Complaint imply that Defendants' actions were based on

20  Plaintiff's location outside a restaurant, his attempt to leave

21  the parking lot, and his physical appearance.  Plaintiff alleges

22  that he had not consumed any alcohol, negating any inference that

23  he smelled of alcohol or was under the influence of alcohol.

24  Plaintiff asserts that Defendant Rodriguez did not appear to

25  Plaintiff to be involved in a traffic stop with which Plaintiff

26  could have interfered and refers to the allegations that

1  Defendants Rodriguez, Wilkin and Long were rude and disrespectful

2  in their comments to Plaintiff.  Plaintiff contends that "[f]rom

3  these facts and his personal knowledge of the conduct and

4  attitude of Defendants," his treatment by Defendants was racially

5  motivated.  Plaintiff further notes that intent and motivation

6  "are almost always conclusory allegations not susceptible to

7  factual allegations in a complaint" and argues that the factual

8  allegations sufficiently support an inference of unlawful racial

9  motive to withstand the motion to dismiss on this ground.

10       Defendants' motion to dismiss on this ground is DENIED.

11            2.  Personal Participation.

12       Defendants move to dismiss the First Claim for Relief on the

13  ground that their respective personal participation in the

14  alleged constitutional violations is not adequately pleaded.

15       "A supervisor is only liable for constitutional violations

16  of his subordinates if the supervisor participated in or directed

17  the violations, or knew of the violations and failed to act to

18  prevent them.  There is no respondeat superior liability under

19  section 1983."  *Taylor v. List*, 840 F.2d 1040, 1045 (9th

20  Cir.1989).  As explained in *Blankenhorn v. City of Orange*, 485

21  F.3d 463, 481 n.12 (9th Cir.2007):

22            An officer's liability under section 1983 is
           predicated on his 'integral participation' in
23            the alleged violation.  *Chuman v. Wright*, 76
           F.3d 292, 294-95 (9th Cir.1996).  '"[I]ntegral
24            participation' does not require that each
           officer's actions themselves rise to the
25            level of a constitutional violation.'  *Boyd*,
           374 F.3d at 780.  But it does require some
26            fundamental involvement in the conduct that

1          allegedly caused the violation.  *See id.*

2                    a.  <u>Catalina Rodriguez</u>.

3          Defendants argue that the facts alleged against Defendant

4    Rodriguez do not state a claim, asserting that the Complaint

5    alleges that Rodriguez yelled at Plaintiff that he was

6    interfering with her traffic stop, ordered him to get out of his

7    vehicle, and accused Plaintiff of having been drinking.  At that

8    point Defendants Wilkin and Long arrived and Rodriguez walked

9    over to another vehicle and talked to its driver.  Defendants

10   argue that there are no allegations of any personal participation

11   by Rodriguez in Plaintiff's arrest and the claim for violation of

12   the Fourth Amendment should be dismissed against her.

13         Plaintiff responds that Rodriguez falsely accused him of

14   interfering with her traffic stop and with drinking.  When

15   Defendant Wilkin placed Plaintiff under arrest, Rodriguez

16   acquiesced by failing to tell Wilkin the truth and that no field

17   sobriety test had been conducted.  Plaintiff asserts that

18   Rodriguez failed to act as a reasonable law enforcement officer

19   to stop an unlawful arrest.

20         Defendants argue that merely apprising other officers of her

21   assessment of the situation does not rise to the level of

22   participation in a constitutional violation.  Defendant Rodriguez

23   did not detain or arrest Plaintiff and her presence at the scene

24   at the time of his arrest does not implicate her in the

25   allegations of unlawful arrest.

26         Defendants' contention ignores that Rodriguez was the

                                   10

1  initial and motivating force for Plaintiff's detention and
2  allegedly gave false information about Plaintiff to cause the
3  detention and arrest.

4        Defendants' motion to dismiss as to Defendant Rodriguez is
5  DENIED.

6              b.  <u>Larry Hustedde</u>.

7        Defendants assert that the allegations against Defendant
8  Hustedde do not infer his personal participation in the alleged
9  violations of Plaintiff's Equal Protection or Fourth Amendment
10  rights.  The Complaint alleges that Defendant Hustedde arrived on
11  the scene after Plaintiff had been arrested and placed in the
12  back of the patrol car.  Defendant Hustedde questioned Plaintiff
13  and then contacted his supervisor, Defendant Salazar.  Shortly
14  after Defendant Salazar arrived, Plaintiff was released.

15        Plaintiff responds that Defendant Hustedde acknowledged to
16  Plaintiff that no violation of the law had occurred and refused
17  to conduct a PAZ test, thereby inferentially demonstrating his
18  awareness that Plaintiff was not under the influence and his
19  acquiescence in and perpetuation of an allegedly false accusation
20  and arrest.  Plaintiff asserts that Defendant Hustedde continued
21  Plaintiff's unlawful detention by not releasing him and "by
22  passing it on to Lt. Salazar," thereby failing to act as a
23  reasonable law enforcement officer to stop an unlawful arrest.

24        Defendants argue that Sergeant Hustedde's attempt to gather
25  information prior to Plaintiff's release does not establish his
26  "integral participation" in Plaintiff's detention or arrest.

11

1   Defendants' motion to dismiss as to Defendant Hustedde is

2   DENIED.  Defendants' contentions raise factual issues to be

3   resolved by summary judgment or trial.

4               c.  <u>Mark Salazar</u>.

5       The Complaint alleges that, approximately thirty minutes

6   after Plaintiff was arrested, Defendant Salazar arrived at the

7   scene at the request of Defendant Hustedde.  Defendant Salazar

8   spoke with the officers at the scene for approximately twenty

9   minutes and then ordered Plaintiff released.  Defendants contend

10  there are no facts to support Defendant Salazar's personal

11  participation in the alleged violations of Plaintiff's

12  constitutional rights.

13      Plaintiff responds that the Complaint alleges that Defendant

14  Salazar refused him the PAZ test before he arrived on the scene,

15  implying that Defendant Salazar did not believe Plaintiff was

16  under the influence of alcohol and did not want to know the

17  truth, but did not immediately order him to be released and

18  unjustifiably prolonged the unlawful detention and arrest after

19  Defendant Hustedde had determined no law had been violated.

20      Plaintiff further argues that the fact that a sergeant and a

21  lieutenant were called to the scene "gives rise to the

22  implication that Defendants were aware the arrest was unlawful

23  and were trying to extricate themselves."  Plaintiff contends

24  that each defendant contributed to the total circumstances and

25  each should be held accountable.

26      That Defendant Salazar took some time to gather information

12

1   to assess the situation does not establish his integral

2   participation in Plaintiff's detention and arrest.  However,

3   there is no legal justification for his refusal of the PAZ test

4   while Plaintiff was endeavoring to exonerate himself.  The extent

5   to which he knew or should have known that the Defendants

6   Rodriguez, Long and Wilkin were falsifying the alleged probable

7   cause for arrest and continuing an unlawful arrest merits

8   discovery.

9        Defendants' motion to dismiss on this ground is DENIED.

10            3.   <u>Qualified Immunity</u>.

11        Defendants Rodriguez, Hustedde and Salazar move to dismiss

12   the First Claim for Relief on the ground of qualified immunity

13   with regard to Plaintiff's claims of detention and arrest in

14   violation of the Fourth Amendment.

15        Qualified immunity serves to shield government officials

16   "from liability for civil damages insofar as their conduct does

17   not violate clearly established statutory or constitutional

18   rights of which a reasonable person would have known."  *Harlow v.*

19   *Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme Court has set

20   forth a two-pronged inquiry to resolve all qualified immunity

21   claims.  First, "taken in the light most favorable to the party

22   asserting the injury, do the facts alleged show the officers'

23   conduct violated a constitutional right?" *Saucier v. Katz*, 533

24   U.S. 194, 201 (2001).  If the court determines that the conduct

25   did not violate a constitutional right, the inquiry is over and

26   the officer is entitled to qualified immunity.  However, if the

13

court determines that the conduct did violate a constitutional right, *Saucier*'s second prong requires the court to determine whether, at the time of the violation, the constitutional right was "clearly established." *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case. *Id*. at 201. Even if the violated right is clearly established, *Saucier* recognized that, in certain situations, it may be difficult for a police officer to determine how to apply the relevant legal doctrine to the particular circumstances he faces. If an officer makes a mistake in applying the relevant legal doctrine, he is not precluded from claiming qualified immunity so long as the mistake is reasonable. If "the officer's mistake as to what the law requires is reasonable, ... the officer is entitled to the immunity defense." *Id*. at 205. In *Brosseau v. Haugan*, 543 U.S. 194 (2004), the Supreme Court reiterated:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted. *Saucier v. Katz*, 533 U.S., at 206 (qualified immunity operates 'to protect officers from the sometimes "hazy border between excessive and acceptable force"'). Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time

14

did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'  *Id.*, at 201.  As we previously said in this very context:

> '[T]here is no doubt that *Graham v. Connor, supra*, clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.  Yet, that is not enough.  Rather, we emphasized in *Anderson* [*v. Creighton*] "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.' ... The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' ...

The Court of Appeals acknowledged this statement of law, but then proceeded to find fair warning in the general tests set out in *Graham* and *Garner* ... In so doing, it was mistaken.  *Graham* and *Garner,* following the lead of the Fourth Amendment's text, are cast at a high level of generality.  See *Graham v. Connor*, *supra*, at 396 ('"[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application"').  Of course, in an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law.'

15

543 U.S. at 198-199.  However, as explained in *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir.2003), *cert. denied sub nom. Scarrot v. Wilkins*, 543 U.S. 811 (2004):

> Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate.  *See Saucier*, 533 U.S. at 216 ... (Ginsberg, J., concurring)('Of course, if an excessive force claim turns on which of two conflicting stories best captures what happened on the street, *Graham* will not permit summary judgment in favor of the defendant official.').

Probable cause to arrest exists if, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the plaintiff] had committed a crime.  *Beier v. City of Lewiston*, 354 F.2d 1058, 1065 (9th Cir.2004).  The proper inquiry where an officer is claiming qualified immunity for a false arrest claim is "whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff."  *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir.2002).  Qualified immunity does not depend on whether probable cause actually existed.

a.  <u>Defendant Rodriguez</u>.

Defendants argue that it was not unreasonable for Defendant Rodriguez to ask Plaintiff to exit his vehicle and then allow Defendants Wilkin and Long to take over as she was already engaged in another traffic stop; that it was not unreasonable for Defendant Hustedde, who arrived after Plaintiff was arrested, to

16

question Plaintiff and then call Defendant Salazar; and that it was not unreasonable for Defendant Salazar, who arrived thirty minutes after Plaintiff's arrest, to speak with the officers and then order Plaintiff released.  This totally partisan analysis accepts the credibility of the Defendants and ignores the allegations of the Complaint.

Plaintiff responds that Defendants' invocation of qualified immunity fails to address the question of national origin discrimination.  Although Defendant Rodriguez could lawfully ask Plaintiff to exit his vehicle and turn it over to further investigation, Plaintiff contends, if she did so because Plaintiff was Hispanic, her conduct was unlawful and no officer could reasonably believe "that is a lawful basis."  Moreover, she is alleged to have falsely accused Plaintiff of interfering with her unrelated investigation and she did not conduct any sobriety evaluation.

"Although a defendant's subjective intent is usually not relevant to the qualified immunity defense, his mental state *is* relevant when ... it is an element of the alleged constitutional violation."  *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir.2002), *citing Jeffers v. Gomez*, 267 F.3d 895, 911 (9th Cir.2001).  Plaintiff argues that he has not had the opportunity to obtain evidence of motive and should be allowed to do so: "Defendant Rodriguez will need to be able to articulate a lawful basis for her acts and her omissions consistent with the facts and circumstances."

1    Defendants reply that Plaintiff is "attempting to implicate

2    her in a Fourth Amendment violation" and that Defendant

3    Rodriguez's subjective intent is irrelevant:

4            It would not be unreasonable for Rodriguez to
             ask Plaintiff to exit the vehicle and then
5            allow Officers Wilkin and Long to take over
             as she was already engaged in another traffic
6            stop.  Nor would it be clear to Rodriguez or
             any other reasonable officer that doing so
7            would be unlawful.

8    The analysis is complicated because the First Claim for

9    Relief alleges both a violation of the Fourth Amendment and a

10   violation of the Equal Protection Clause.  Subjective motivation

11   is irrelevant to a violation of the Fourth Amendment but is

12   relevant to a violation of the Equal Protection Clause.

13   Defendants seek qualified immunity solely on the alleged

14   violation of the Fourth Amendment.  Here, the Complaint alleges

15   that Defendant Rodriguez falsely accused Plaintiff of interfering

16   with a non-existent traffic stop and with being under the

17   influence of alcohol, when he alleges he was not.  It is

18   inferrable that Defendant Rodriguez advised Defendants Long and

19   Wilkin of these allegedly false accusations, thereby causing them

20   to place Plaintiff under arrest.  Because the facts have not been

21   developed, there is a dispute as to Defendant Rodriguez's

22   actions.  There can be no question that using false accusations

23   to effect an arrest violates a clearly established constitutional

24   right under the Fourth Amendment of which a reasonable officer

25   would have known, i.e., the right to be free from arrest when

26   there is no probable cause.  With regard to the alleged violation

of equal protection, evidence of subjective motivation is a part
of any determination of qualified immunity for the alleged
violation of equal protection.  This decision cannot be made as a
matter of law.

Defendants' motion to dismiss on qualified immunity grounds
as to Defendant Rodriguez is DENIED.

b.  <u>Defendant Hustedde</u>.

With regard to Defendant Hustedde, Plaintiff contends that
he expressly ratified Plaintiff's wrongful arrest by failing to
release Plaintiff once Defendant Hustedde acknowledged that
Plaintiff had not violated the law:

> Having reached this conclusion, Defendant
> Hustedde could not reasonably believe Rascon
> could lawfully continue to be held ...
> Rascon's's continued unlawful detention was
> directly attributable to Defendant Hustedde.

Defendants cite *Martiszus v. Washington County*, 325
F.Supp.2d 1160, 1165 (D.Or.2004) as authority that ratification
requires a policymaker's approval of a subordinate's decision.
Defendants assert that Plaintiff does not allege that Sergeant
Hustedde was a policymaker.  *Martiszus* is not controlling.
*Martiszus* discusses the imposition of municipal liability under
*Monell*.

Defendants argue that, "[n]otwithstanding the first question
of whether Sgt. Hustedde calling his superior to the scene before
he [sic] released Rascon rises to the level of a Fourth Amendment
violation, the question is whether it would it [sic] be clear to
Sgt. Hustedde that doing so was unlawful under the circumstances

19

facing him."

The officers at the scene, Defendants Wilkin and Long, arrested Plaintiff.  For reasons based on his own observations, Defendant Hustedde did not agree with their assessment.  It is necessary that discovery be conducted to determine the basis for Defendant Hustedde's alleged violation of Plaintiff's rights against unlawful arrest by seeking advice from his superior officer.

Defendants' motion to dismiss on qualified immunity grounds as to Defendant Hustedde is DENIED.

c.  <u>Defendant Salazar</u>.

With regard to Defendant Salazar, Plaintiff asserts that circumstances indicate that Defendant Salazar had been briefed before he arrived on the scene because Defendant Hustedde told Plaintiff that a lieutenant had denied Plaintiff's request for a PAZ test.  Plaintiff contends that, because Defendant Hustedde had already concluded that Plaintiff had not violated any law, "it is unclear why Salazar had to respond to the scene and why he did not just order him released."  Plaintiff asserts that when Defendant Salazar did arrive, he did not immediately order Plaintiff released, although he continued the refusal to conduct a PAZ test requested by Plaintiff.

Defendants reply that the fact Defendant Salazar took the time to assess the situation does not implicate him in the alleged Fourth Amendment violation: "He was not there when the events transpired so its stands to reason he would want to gather

information before taking action."

Although Defendant Salazar was not present when Plaintiff was detained and arrested and did not agree with the assessment by Defendants Rodriguez, Long and Wilkin, it is necessary to conduct discovery to determine why Defendant Salazar did not immediately order Plaintiff's release, knowing that Defendant Hustedde had decided no law had been violated.

Defendants' motion to dismiss on qualified immunity grounds as to Defendant Salazar is DENIED.

C.  <u>SECOND CLAIM FOR RELIEF</u>.

Defendants move to dismiss the Second Claim for Relief for conspiracy in violation of Section 1985(3) on the ground that the allegation of conspiracy is not adequately pleaded.

In order to state a claim upon which relief can be granted under Section 1985(3), a plaintiff must allege the following four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828-829 (1983). The second of these four elements requires that in addition to identifying a legally protected right, that the Amended Complaint allege that the conspiracy was motivated by "some racial, or

perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Trerice v. Pedersen*, 769 F.2d 1398, 1402 (9th Cir. 1985). "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). In *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir.2005), the Ninth Circuit explained:

> The complaint also failed to allege evidence of a conspiracy and an act in furtherance of that conspiracy, which are required elements of a § 1985(3) action ... It is alleged that Newell and others conspired to violate the Holgate's civil rights, but it did not allege that a specific act was committed in furtherance of this conspiracy ... While Rule 8(a)(2) does not require plaintiffs to lay out in detail the *facts* upon which their claims are based, it does require plaintiffs to provide 'a short and plain statement of the claim' to give the defendants fair notice of what the claim is and the grounds upon which it is based.

Defendants argue that the Complaint fails to allege that Defendants agreed among themselves to deprive Plaintiff of equal protection of the laws and fails to allege any facts to support his conclusion that Plaintiff's detention and arrest were motivated by Plaintiff's national origin.

Plaintiff responds that he is not alleging that Defendants "started out with a conspiracy." Rather, once Defendants knew of Plaintiff's status as a law enforcement officer, "they began with the unity of purpose to avoid being held accountable for their wrongful acts." Plaintiff asserts:

22

The wrongful act was violating Plaintiff's Constitutional right to be free from unreasonable search and seizure because he is Hispanic.  When Defendant Wilkin put Plaintiff under arrest for DUI, without conducting a field sobriety test or any evidence to support the arrest, Defendants Rodriguez and Long became responsible for failing to act.

Normally, that failure to act would go officially unnoticed and unpunished but Plaintiff's position in law enforcement made that less likely.  Plaintiff was initially subjected to the bullying that crossed the line into unlawfulness because he is Hispanic; he would not have been treated in that manner under those circumstances had he been Caucasian.  Once Defendant Officers had Rascon's badge, they all knew they had gone too far and that Rascon knew it as well.  So they called their sergeant.

Unfortunately, calling the sergeant did not cure the problem.  Sgt. Hustedde knew the officers had intentionally violated Rascon's rights and that his detention and arrest was illegal.  Defendant Hustedde admitted Rascon had violated no law yet did not release him. Hustedde perpetuated the underlying violation and in so doing, becomes an accomplice after the fact.  Like his subordinates, Hustedde called for help because it was obvious the [sic] Rascon's rights had been violated.  In other words, like the Defendant Officers, Hustedde is hoping Lt. Salazar would find a way out.  Despite nearly half an hour of discussions at the scene, Salazar could not find a way and ultimately, to his credit, released Plaintiff.  Plaintiff is sure the defense will have other explanations for the events, however, at this stage, the facts must be construed in the light most favorable to Plaintiff.  Plaintiff can construe the facts, as above indicated, in a manner which supports his contentions of racial discrimination, harassment and conspiracy.

Accepting as true that Plaintiff's race caused his disparate treatment, detention and arrest, Plaintiff's allegations that the

23

1  Defendants conspired and combined to falsely arrest and continue

2  to unlawfully detain Plaintiff due to his ethnicity is sufficient

3  for a Section 1985(3) conspiracy.

4          Defendants' motion to dismiss on this ground is DENIED.

5          D.   <u>THIRD CLAIM FOR RELIEF</u>.

6          Defendants Rodriguez, Hustedde and Salazar move to dismiss

7  the Third Claim for Relief on the ground that Plaintiff has

8  failed to allege compliance with the California Government Tort

9  Claims Act.

10         As Plaintiff points out, however, the Third Claim for Relief

11 is based on 42 U.S.C. § 1986:

12              Every person who, having knowledge that any
                of the wrongs conspired to be done, and
13              mentioned in section 1985 of this title, are
                about to be committed, and having power to
14              prevent or aid in preventing the commission
                of the same, neglects or refused so to do, is
15              such wrongful act be committed, shall be
                liable to the party injured ... for all
16              damages caused by such wrongful act, which
                such person by reasonable diligence could
17              have prevented ....

18 The California Government Tort Claims Act does not apply to

19 actions brought under the federal civil rights acts.  *See*

20 *Williams v. Horvath*, 16 Cal.3d 834 (1976).

21         Defendants' motion to dismiss the Third Claim for Relief on

22 this ground is DENIED.

23         Defendants Rodriguez, Hustedde and Salazar move to dismiss

24 the Third Claim for Relief on the ground that insufficient facts

25 are alleged to support a claim of breach of statutory duty.

26 Defendants assert that Defendant Rodriguez asked Plaintiff to

1  exit his vehicle and than turned the investigation over to

2  Defendants Long and Wilkin because Defendant Rodriguez was

3  involved in another traffic stop; that Defendant Hustedde arrived

4  after Plaintiff's detention and arrest and, after questioning the

5  officers and Plaintiff, summoned Defendant Salazar; Defendant

6  Salazar arrived on the scene at the request of Defendant Hustedde

7  and, after questioning the officers and Plaintiff, released

8  Plaintiff.

9      This ignores that Defendant Rodriguez was the catalyst by

10  falsely reporting to fellow officers that Plaintiff had

11  interfered with her work.

12      Plaintiff responds that the breach of statutory duty is the

13  failure or refusal to prevent the commission of the alleged

14  conspiracy:

15          Defendant Rodriguez was in a position to
           prevent Defendant Wilkin from arresting
16          Plaintiff when there was no probable cause;
           Defendant Hustedde was in a position to stop
17          the conspiracy from proceeding by stopping
           the continued detention very soon after
18          Rascon was placed in the patrol car; and,
           Defendant Salazar could have stopped it when
19          Hustedde brief [sic] him.

20      Defendants reply that, because the Complaint fails to

21  adequately allege a claim for conspiracy in violation of Section

22  1985(3), Plaintiff's Section 1986 claim necessarily fails. *See*

23  *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1040 (9th Cir.1990),

24  *cert. denied,* 502 U.S. 957 (1991).

25      Because Plaintiff has adequately alleged a Section 1985(3)

26  conspiracy against the moving Defendants, the motion to dismiss

1  on this ground is DENIED.

2                          **CONCLUSION**

3      For the reasons stated:

4      1.   Defendants' motion to dismiss is DENIED;

5      2.   Defendants shall file an Answer to the Complaint within

6  20 days of the filing date of this Memorandum Decision and Order.

7  IT IS SO ORDERED.

8  **Dated:   January 20, 2009**              **/s/ Oliver W. Wanger**
                                        UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26